IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**STEVEN EBERLINE on behalf of himself
and all other similarly situated employees**                    **PLAINTIFF**

**v.**                                                          **CAUSE NO. 1:13CV100-LG-JCG**

**MEDIA NET LLC, JOHN ATEEQ, and
MYKHAYLO KALYN**                                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER
DENYING MOTIONS FOR SUMMARY JUDGMENT**

BEFORE THE COURT are cross-motions for summary judgment filed by the
parties in this Fair Labor Standards Act case.  Plaintiff Steven Eberline has moved
for partial summary judgment [81] requesting judgment on a number of elements of
his FLSA case.  The defendants, Media Net, LLC, John Ateeq, and Mykhaylo Kalyn,
have moved for summary judgment [78] requesting judgment that the plaintiff was
an independent contractor and not entitled to the protections of the FLSA.  Also
before the Court is Eberline's Motion [87] to Strike the Affidavit of Brian
Hollingsworth.

After due consideration of the submissions, it is the Court's opinion that
there are questions of material fact precluding summary judgment.  Accordingly,
both summary judgment motions will be denied.  Furthermore, it was not necessary
for the Court to refer to Hollingsworth's affidavit in reaching this conclusion, and
therefore the Motion to Strike will be denied as moot.

DISCUSSION

**The Allegations of the Complaint**

Plaintiff Steven Eberline alleges that he worked primarily as an installer for defendant Media Net LLC for two periods between June 2010 and March 2012. Media Net supplies technical and installation services to DirecTV, a satellite television service provider.  The two individual defendants, Ateeq and Kalyn, are the owners and managing operators of Media Net.  Eberline alleges that Media Net improperly classified him as an independent contractor rather than an employee, and although he regularly worked more than forty hours per week, Media Net did not pay him for overtime.

Eberline brings this action to recover lost wages under Section 207(a)(1) of the FLSA[1] on behalf of himself and others similarly situated.  He also alleges that the defendants violated the record-keeping requirements of Section 211(c),[2] and that

---

[1]  29 U.S.C. § 207(a)(1) states that,

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

[2]  29 U.S.C. § 211(c) states in part that,

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records

the defendants' violations of the FLSA were willful within the meaning of Section 255(a), making the applicable statute of limitations three years.

**Procedural History**

Earlier in this case, the Defendants moved for dismissal for failure to state a claim, which motion was denied. (Order Denying Def.s' Mot. to Dismiss, ECF No. 31). Also, Plaintiff Eberline moved for class certification under § 16 of the FLSA. The Court determined that there was a reasonable basis to believe that other employees similarly situated to Eberline existed, and therefore conditionally certified a collective class for discovery purposes. (Mem. Op. & Order Granting Class Certification, ECF No. 37).

Eberline brought claims very similar to those in this case against a satellite television services installation company he worked for in Tennessee from April to August, 2012 - after leaving Media Net. *See Hollis v. Dump Cable, Inc.*, No. 1:13cv1077-JDB-egb (W.D. Tenn. Mar. 1, 2013). In connection with his response to Media Net's summary judgment motion in this case, Eberline attached the decision of the Western District of Tennessee in which the court found, as a matter of law,

---

of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

that Eberline was an employee rather than an independent contractor.  (Pl. Resp. Ex. A, ECF No. 83-1).  Review of that decision shows significant differences in the circumstances of Eberline's employment with the Tennessee company.  The litigation is currently stayed pursuant to a notice of bankruptcy filed by the company.

**Establishing an FLSA Claim**

The FLSA allows injured employees to sue directly on their own behalf under 29 U.S.C. § 216(b), for back pay, plus an equal amount as liquidated damages. *Reich v. Tiller Helicopter Servs., Inc*., 8 F.3d 1018, 1030 (5th Cir. 1993).  In order to establish a claim for failure to compensate under the FLSA, the plaintiff must first show an employer/employee relationship.  The FLSA defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[3]  29 U.S.C. § 203(d).  An "employee" is defined as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  An entity employs an individual under the FLSA if it "suffer[s] or permit[s]" that individual to work. 29 U.S.C. § 203(g).  Both parties contend they are entitled to judgment as a matter of law regarding whether an employee/employer relationship existed between Eberline and Media Net.

As observed by the Fifth Circuit, the FLSA definitions of "employee" and

---

[3]  The defendants have not engaged Eberline's argument that the two individuals as well as the LLC should be classified as employers.  Because this issue is not in dispute, the Court will simply refer to all defendants as "Media Net."

"employer" are broad and intended to encompass "some parties who might not qualify as such under a strict application of traditional agency law principles." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)).  And although Eberline was employed pursuant to an "Installer's Agreement" explicitly designating him an independent contractor rather than an employee, the Agreement's terms are not determinative.  *See Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1315 (5th Cir. 1976) ("[n]either contractual recitations nor subjective intent" can mandate a finding of employee or independent contract status.).  Instead, in order to determine whether an individual is an employee or an independent contractor, the relevant inquiry is "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself."  *Hopkins*, 545 F.3d at 343 (citing *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998)).  In making that determination, the Court should consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.  *Hopkins*, 545 F.3d at 343.  No factor is sufficient or dispositive in and of itself; instead each should be considered in the larger context of the ultimate inquiry.  *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d

1042, 1043-44 (5th Cir. 1987). This inquiry is a question of law. *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984); *see also Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir. 1983); *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). Therefore, if there are no genuine questions of fact regarding the factors, the Court should determine Eberline's status as a matter of law.

In addition to Eberline's own case in Tennessee, there have been a number of opportunities for courts to examine the issue of whether a cable or satellite television installer is an employee under the FLSA.[4]  There has been no consistent result, however, and one court has noted that the determination is "highly dependent on the specific context in which an individual performs his work." *Lang v. DirecTV, Inc.*, 801 F. Supp. 2d 532, 536 (E.D. La. 2011).

**A. Control**

In determining the degree of control exercised by the purported employer, the court should look to whether an individual exerts such control over a meaningful part of the business that he stands as a separate economic entity, or whether the

---

[4]  Compare *Freund v. Hi–Tech Satellite, Inc.*, 185 F. App'x. 782 (11th Cir. 2006) (satellite installer was independent contractor); *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667 (D. Md. 2000), *aff'd*, 16 F. App'x. 104 (4th Cir. 2001) (cable installers were independent contractors); and *Dole v. Amerilink Corp.*, 729 F. Supp. 73 (E.D. Mo.1990) (same); with *Parrilla v. Allcom Const. & Installation Servs.*, No. 6:08-cv-1967-Orl-31GJK, 2009 WL 2868432 (M.D. Fla. Aug. 31, 2009) (cable installer was employee); and *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1323 (S.D. Fla. 2001) (genuine issue of fact as to whether cable installer was employee).

alleged employer still controls the meaningful economic aspects of the business. *See Hopkins*, 545 F.3d at 343. The autonomy of the individual must be meaningful, as "the lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence." *Id*. (quoting *Mr. W. Fireworks*, 814 F.2d at 1049).

Media Net provides evidence in the form of the Installer's Agreement that they disclaimed any control over Eberline and defined his status as an independent contractor. (Def. Ex. A, ECF No. 78-1). His work was not supervised, and he provided his own tools, truck and materials. (Pl. Ex. B 11, ECF No. 81-2). He was required to inform Media Net thirty days in advance of "what area, what day and what not" he was going to work, and a computer program provided by DirecTV matched the criteria for each technician to Media Net's work orders for each day. (Pl. Ex. A 19-21, 58, ECF No. 81-1). Each technician could get "two, three, four, however" jobs assigned for the day depending on their ability, which was tracked by DirecTV's software. (*Id*. at 91-92). Typically, technicians were assigned three jobs per day. (*Id*. at 92). The jobs were assigned to either a morning or afternoon service window. Eberline could prioritize jobs within each service window, and as long as he arrived at a job before the end of its assigned service window, he was on time. (*Id*. at 91, 94). Additionally, technicians were allowed to hire helpers, for which they were solely responsible. (Def. Reply Ex. E 2 (¶¶15, 16), ECF No. 85-1).

Technicians were required by the Installer's Agreement to wear a "DirecTV

uniform with name badge (khaki pants, DTV shirt, and proper boots)." (Def. Ex. A 10 (¶A-16), ECF No. 78-1). In actuality, technicians were "wearing jeans, they're wearing khakis, they're wearing shorts. Some of them are wearing DirecTV shirts, some of them are wearing just a blue shirt and some of them are wearing just a shirt they like to wear." (Pl. Ex. A 106, ECF No. 81-1). Defendant Ateeq stated in his affidavit that every installer "was free to negotiate with the customers for additional services such as hanging a television on a wall. The company received nothing for this additional work." (Def. Ex. C 3 (¶20), ECF No. 78-3). Ateeq further stated that "DirecTV never invoiced additional work for a customer. Therefore, if any extra work, such as 'wall fish' or hanging a TV, was done, then the customer worked out an agreement with the installer and the installer pocketed the money." (Def. Reply Ex. E 3-4 (¶26), ECF No. 85-1).

Eberline points to the fact that he was required to wear a DirecTV uniform as evidence of Media Net's control over his work. He also points to the provision in the Installer's Agreement that he was only permitted to complete "authorized" work at a customer's home – the work that was written on the particular work order. He states in his supplemental declaration that he did not negotiate with customers for additional services:

> DirecTV charged customers for custom labor. For example, if a customer asked an installer for a "wall-fish," the rate would be arranged between the customer and a DirecTV agent on the phone. DirecTV would take a 1/3 commission for the custom labor work. All custom labor had to be related to the satellite installation.

(Pl. Ex. C 1 (¶3), ECF No. 81-3).

Eberline further states that although he received work orders issued by Media Net based on the days he indicated that he was available, he had no control over whether the work orders were for morning, afternoon or evening jobs. (*Id*. (¶4)). He could not reschedule the work orders unless it was for the customer's convenience. Furthermore, if he deviated from Media Net's quality standards, he was issued a charge-back or penalty fee, deducted from his paycheck. (*Id*. (¶5)). He was subject to a fifty dollar penalty if he did not arrive at a customer's home within the four hour service window. His pay was based on a rate set by Media Net for each job, regardless of the actual hours worked. Eberline's schedule was so heavy that even though he was allowed to have other employment, he worked exclusively for Media Net; he alleges a typical work week of sixty to seventy hours.

Several of the circumstances detailed by Eberline supported independent contractor status for the plaintiff in the Eleventh Circuit case of *Freund*. 185 F. App'x at 783. The court in that case noted that

> the specific details about how Freund carried out his duties were left to him with the exception that 1) he was not allowed to perform any additional services that were not paid for by the customers without Hi-Tech's approval; 2) he had to wear a Hi-Tech shirt during appointments; 3) he had to follow certain minimum specifications for the installations; and 4) he had to call Hi-Tech to confirm he had completed the installation and report any problems that had arisen. The district court found that Hi-Tech's interest in Freund's work was the end result of customer satisfaction, and not with the day-to-day regulation of his work habits, hours worked or work methods.

*Id*. The Eleventh Circuit therefore upheld the conclusion the district court reached after a bench trial - that the installer was an independent contractor. However,

-9-

there are also significant differences from this case. Freund solely determined the hours he spent at work; was at liberty to re-schedule any of his appointments with customers and was not subject to charge-backs or other significant limitations in terms of how he actually carried out his work. *Id.*

In this case, the Court finds genuine issues of fact regarding the nature and degree of control Media Net maintained over Eberline's work. The evidence conflicts as to Eberline's ability to operate "as a separate economic entity" once he was on an installation job. *Usery*, 527 F.2d at 1312-13. Media Net maintains that Eberline could perform extra services for his own benefit, while Eberline contends that any such services had to be approved by DirecTV and a portion of the fee paid to DirecTV. The resolution of this question will impact the Court's determination of whether Media Net controls the meaningful economic aspects of the business.

### B. Relative Investment

As to the relative-investment prong, the court should compare the worker's individual investment to that of the purported employer. Media Net argues that it had "much less invested in the venture than the Plaintiffs." (Def. Memo. 6, ECF No. 79). It was DirecTV that supplied the equipment - the dish, control box, etc. - while the installers supplied the tools, installation supplies, transportation, insurance, and any helpers desired. Media Net argues that its role was to simply assign installers to DirecTV customers. (*Id.*).

The essential facts regarding what each party provided in order to complete Media Net's work are undisputed. Courts examining similar facts have generally

found this factor favored independent contractor status.  *See, e.g., Scruggs v. Skylink, Ltd.*, No. 3:10-0789, 2010 WL 6026152, *6 (S.D.W.V. Dec. 2, 2011) (that installers were responsible for providing own work equipment and vehicles supported finding they were not employees); *Keeton v. Time Warner Cable, Inc.*, No. 2:09-CV-1085, 2011 WL 2618926, *5 (S.D. Ohio July 1, 2011) (cost of cable television equipment does not equate to "employer's" significant investment into tools required to execute the installation process);  *Herman*, 164 F. Supp. 2d at 675 (installers providing own vehicle, specialty tools, insurance and taxes, and their ability to hire helpers, indicative of independent contractor status).  *But see Parrilla*, 2009 WL 2868432, *4 (installer's tools and vehicle insignificant investment compared to cost of satellite equipment).

It is the Court's opinion that the undisputed facts support a finding that Eberline invested substantially more in completing the work than Media Net, and therefore this factor indicates that Eberline was an independent contractor.

**C.  Opportunity for Profit or Loss**

Turning to the degree to which the worker's opportunity for profit or loss is determined by the alleged employer, the Court should analyze whether the worker or employer controlled the "major determinants of the amount of profit which the [worker] could make."  *Usery*, 527 F.2d at 1313.  Whether such workers are paid on a commission or percentage basis is relevant, but not necessarily dispositive; instead, factors such as pricing of the service offered, service location, advertising,

and customer volume should also be considered.  *Id.*  In *Thibault v. Bellsouth Telecommunications, Inc.*, for instance, the workers were paid a set hourly rate, but were able to control their opportunity for profit or loss by controlling costs such as "repairs, supply costs, food, water, housing, etc."  612 F.3d 843, 848 (5th Cir. 2010).  The Fifth Circuit determined that the factor weighed in favor of the plaintiffs' status as independent contractors.  *Id.*  Moreover, in *Hickey v. Akra Industries, Inc.*, the Fifth Circuit found that where a salesperson's profits were determined by his ability to increase customer volume and he was allowed to sell other products, he was likewise an independent contractor.  699 F.2d 748, 752 (5th Cir. 1983).  Conversely, in *Usery*, the plaintiffs, who worked as dry cleaning operators, were paid a percentage of their sales volume, but the company retained control over the pricing of services, location of the sales area, and advertising.  527 F.2d at 1314.  Additionally, there was no risk of loss involved for the plaintiffs.  *Id.*  The Fifth Circuit therefore concluded that "[n]o opportunity for loss of the capital investment in the [dry cleaning] station's operation and control by [defendant] of major determining factors of profit indicate that the operators are dependent upon [defendant], and therefore, that they are employees."  *Id.*

Media Net argues that "the opportunity for profit was completely in [Eberline's] hands," because the more installations he performed, the more money he made.[5]  (Def. Mem. 6, ECF No. 79).  Eberline could also control whether he was

---

[5]  Media Net paid its installers $70 for each single installation, and $15 for each additional outlet.

on time to his jobs and performed them according to DirecTV's specifications, and therefore avoid being assessed a penalty or charge-back.  Media Net suggests that this case is analogous to *Carrell v. Sunland Construction, Inc.*, in which the Fifth Circuit determined that welders were independent contractors, in part because the welders could control their own costs and worked for numerous companies over the relevant time period.  998 F. 2d 330, 333-34 (5th Cir. 1993).

Eberline argues that it is true that he could earn more by performing more work, but he was unable to control the number, type or geographic location of his jobs.  As a consequence, he could not control his transportation costs, nor could he choose the more lucrative work.  He argues that an analogous case is *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308 (11th Cir. 2013).  In that case, the court framed the opportunity for profit or loss factor as one "consider[ing] the alleged employee's opportunity for profit or loss depending upon his managerial skill."  *Id*. at 1317. The court stated that "[a]n individual's ability to earn more by being more technically proficient is unrelated to an individual's ability to earn or lose profit via his managerial skill, and it does not indicate that he operates his own business." *Id.*

As other courts have noted, the ability of workers to purchase their own vehicles, tools, supplies, and insurance allow them to control the overhead costs of their business, affecting profits.  *Bennett v. Unitek Global Servs., LLC*, No. 10C4968, 2013 WL 4804841, *8 (N.D. Ill. Sept. 9, 2013); *Thibault*, 612 F.3d at 848;

*Carrell*, 998 F.2d at 334.  Nevertheless, Media Net exercised control over the revenue side of Eberline's profit calculation.  Regardless of how quickly Eberline worked, he would still be subject to Media Net's routing and scheduling.  The Court therefore finds this factor to be neutral, favoring neither employee nor independent contractor status.

### D.  Skill and Initiative

With regard to the skill and initiative required in performing the job, the Fifth Circuit has found it relevant that a worker is highly skilled.  *Carrell*, 998 F.2d at 334.  For instance, "[p]ipe welding, unlike other types of welding, requires specialized skills."  *Id*. at 333.  But "[r]outine work which requires industry and efficiency is not indicative of nonemployee status."  *Usery*, 527 F.2d at 1311.

Eberline argues that his work for Media Net required no specialized training, previous experience or technical expertise.  Installers could learn how to perform their work by riding with and observing other installers.  No certification was required to begin working for Media Net.  (Eberline Declaration 2 (¶10), ECF No. 12-2).  Eberline also points out that the Installer's Agreement requires that all contractors,

> be certified in the following categories.  New Hire Basic, KaKU/SWM, Connected Home (MRV), and SBCA.  The cost of these certifications is 199.00.  Media Net LLC will provide the fee and training for these certifications.

(Def. Ex. A 11, ECF No. 78-1).

Media Net argues that each contractor was required to be a certified

-14-

installer, and that each contractor had to pay for and complete an online installer course before beginning work.  (Def. Ex. C 3 (¶21), ECF No. 78-3).  When asked what skills were necessary for the installer job, Ateeq answered, "[w]ell, they have to have a clean background, drug test, valid driver's license, also certifications.  They have to warranty their work for 90 days, able to perform their work according to the DirecTV specs, yes."  (Pl. Ex. A 51, ECF No. 81-1).

The Court finds that this evidence shows no question of material fact regarding the factor of skill.  No special skills were required to obtain an installer position at Media Net, and therefore this factor points to employee status.

The factor of initiative requires analysis of some of the same evidence considered above.  Eberline had the ability to increase his profits by working more efficiently, and he could show initiative as to the order in which he performed the jobs within the service windows provided.  But the evidence conflicts as to whether he could do additional work, and he was limited in his ability to obtain other work given Media Net's control over his job assignments.  The Court therefore concludes that a factual dispute regarding initiative precludes summary judgment.

### E.  Permanency of the Relationship

Eberline alleges he worked for Media Net from June 2010 to March 2011 (ten months) and August 2011 to March 2012 (eight months).  (1st Am. Compl. 2, ECF No. 7).  He does not indicate where he was working from March to August 2011.  He argues that he was hired on an indefinite basis rather than for a particular job or for a short term.  He contends that when he was working for Media Net, he

regularly worked between sixty and seventy hours per week and did not have time to work for any other company.  (Eberline Declaration 2 (¶11), ECF No. 12-2).

Media Net argues that the Installer's Agreement "clearly states" that employment is on a per job basis and each installation is a separate contract.  (Def. Mem. 3, ECF No. 79).  The Court finds no language to that effect, only a provision that the Agreement would be effective for one year from the acceptance date and automatically renew for one year terms upon extension or renewal.  (Def. Ex. A 5, ECF No. 78-1).

Media Net also asserts that the installer job was as permanent and steady as any installer wanted it to be, as the installer chose which days he wanted to work. Media Net complains that Eberline has not been able to substantiate his allegation that he worked more than forty hours per week, despite being provided with a record of his work assignments in connection with an interrogatory requesting a list of days Eberline claimed to have worked more than forty hours.  (Def. Resp. 3-4, ECF No. 86).  According to Ateeq's affidavits, a review of Eberline's work record showed "only a few assignments or combination of assignments that should have caused any contractor/Plaintiff to work over eight (8) hours in a day or forty (40) hours in a week."  (Def. Ex. C 2 (¶14), ECF No. 78-3; Def. Reply Ex. E 2 (¶18), ECF No. 85-1).  Ateeq further states that "I do not think it is possible for a person to actually work forty (40) hours in a week, even working six (6) days in a week, nor is [sic] possible for a person to actually work eight (8) hours in any one day."  (Def. Reply Ex. E 3 (¶19), ECF No. 85-1).

-16-

In *Herman*, the Fifth Circuit found that the permanency factor pointed toward independent contractor status when "[t]he majority of drivers work for Express for a short period of time.  Drivers are able to work for other courier delivery companies, and the 'Independent Contractor Agreement' does not contain a covenant-not-to-compete."  161 F.3d at 305.  In *Cromwell v. Driftwood Electrical Contractors, Inc.*, the Fifth Circuit described the "permanency and extent" of a relationship where the workers "worked on a steady and reliable basis over a substantial period of time - approximately eleven months - exclusively for their purported employers."  348 F. App'x 57, 61 (5th Cir. 2009).

The Court finds a question of material fact regarding the permanency of the working relationship in this case.  It is possible that although Eberline was permitted to work for others, he was in actuality unable to do so for substantial periods of time because of his work for Media Net.  The evidence conflicts on this point, and therefore summary judgment in inappropriate.

**Liability Under the FLSA**

Eberline's motion for summary judgment additionally seeks judgment as to the ultimate question of liability, contending that he has shown there is no genuine dispute of material fact as to whether he is "entitled to liquidated damages for Defendants' failure to pay Plaintiffs for overtime worked, the amount of which remains to be determined."  (Pl. Mem. 21, ECF No. 82).  However, as the Court is unable to determine at this point whether Eberline is an "employee," his entitlement to FLSA damages cannot be adjudicated.  Furthermore, there is a

genuine dispute of material fact as to whether Eberline in fact performed work for which he was not compensated.  Accordingly, summary judgment is denied as to the question of liability.

CONCLUSION

After applying the parties' arguments and evidence to the five factor employee/independent contractor factors, the Court finds that there are questions of material fact requiring resolution before the legal question of Eberline's status may be determined.  Accordingly, both parties' motions for summary judgment will be denied.  Furthermore, it was not necessary for the Court to refer to the affidavit of Media Net installer Brian Hollingsworth in reaching its conclusion that there are questions of material fact, and therefore the Plaintiff's Motion to Strike Hollingsworth's affidavit will be denied as moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Defendant's Motion [78] for Summary Judgment and Plaintiff Eberline's Motion [81] for Partial Summary Judgment are **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Eberline's Motion [87] to Strike the Affidavit of Brian Hollingsworth is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED** this the 18th day of December, 2014.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

-18-